UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN THE MATTER OF GOLDEN HELM SHIPPING CO. S.A., AS OWNER, AND OSAKA FLEET CO., LTD., AS MANAGER, OF THE M/V ATLANTIC VENUS PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | * * * * | CIVIL ACTION<br><br>NO. 20-1453<br><br>SECTION<br><br>JUDGE |
| * * * * * * * * | | MAG. |

## VERIFIED COMPLAINT

The Verified Complaint of Golden Helm Shipping Co. S.A., as owner, and Osaka Fleet Co., Ltd., as manager, of the M/V ATLANTIC VENUS (collectively "Petitioners"), in a cause of exoneration from or limitation of liability, civil and maritime, within the admiralty and maritime jurisdiction of this Honorable Court, pursuant to 46 U.S.C. §30501, *et seq.,* Rule 9(h) of the Federal Rules of Civil Procedure and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Admiralty Rules"), and represent upon information and belief, as follows:

1.

At all times material hereto, Golden Helm Shipping Co. S.A. ("Golden Helm"), is a company organized and existing under and by virtue of the laws of Panama, with its principal place of business in Panama, and is the owner of the M/V ATLANTIC VENUS.

1

2.

At all times material hereto, Osaka Fleet Co., Ltd. ("Osaka Fleet"), is a company organized and existing under and by virtue of the laws of Japan, with its principal place of business in Japan, and is the manager of the M/V ATLANTIC VENUS for Golden Helm.

3.

The M/V ATLANTIC VENUS is a bulk carrier bearing IMO number 9628257, and flagged under the laws of Panama with a length overall of 179.90 m, a breadth of 28.20, and a gross tonnage of 21,441 mt.

4.

Petitioners used due diligence at all times to make the M/V ATLANTIC VENUS seaworthy, and prior to the allision described herein, the M/V ATLANTIC VENUS was tight, staunch, strong, fully and competently manned, properly equipped and supplied, and in all respects seaworthy and fit for the service in which she was engaged.

5.

On 30 April 2020, the M/V ATLANTIC VENUS arrived at the Kenner Bend Anchorage, approximately Mile 114.8 Above Head of Passes (AHP) of the lower Mississippi River, on the right descending bank of the river. The vessel was properly and safely anchored at the customary anchorage, and firmly held and maintained her anchored position at that location for eight days from 30 April to 8 May, without

experiencing or presenting any safety issues, difficulties or problems to other vessels transiting that area of the Mississippi River, and without any complaints from anyone.

6.

During the afternoon of 8 May 2020, at approximately 1500 to 1600 hours, the M/V NOMADIC MILDE attempted to anchor directly upriver of the M/V ATLANTIC VENUS in an open space of about 1,600 feet between the M/V ATLANTIC VENUS and the M/V IONIAN SEA. Almost immediately after dropping her anchors, the M/V NOMADIC MILDE began moving erratically, dragging her anchors and failing to maintain her position. The M/V NOMADIC MILDE drifted downriver and her port side allided with the bow of the stationary and securely anchored M/V ATLANTIC VENUS at approximately 1655 hours, severing the M/V ATLANTIC VENUS' starboard anchor chain and resulting in the loss of the M/V ATLANTIC VENUS' starboard anchor. The M/V NOMADIC MILDE's port side hull became entangled in the M/V ATLANTIC VENUS' bow anchor chains and continued to impact the MV ATLANTIC VENUS' bow area for a period of time.  The force of the allision and the presence of M/V NOMADIC MILDE's port side hull on the M/V ATLANTIC VENUS' bow pushed the M/V ATLANTIC VENUS downriver and toward the right descending bank.

7.

Pilots and tugs were utilized to remove the M/V NOMADIC MILDE from the M/V ATLANTIC VENUS' bow and anchor chains and, shortly after the extraction, the erratically operated M/V NOMADIC MILDE proceeded out of control downriver and

toward the right descending bank, where it allided with the Cornerstone Chemical Company ("Cornerstone Chemical") facility at approximately Mile 114.5 AHP of the lower Mississippi River.

8.

After the M/V NOMADIC MILDE was disentangled from the M/V ATLANTIC VENUS' bow, the M/V ATLANTIC VENUS proceeded back to the Kenner Bend Anchorage under pilotage, where it safely anchored, deploying its port anchor and utilizing the service of one assist tug and its main engine to maintain its location at the customary anchorage.

9.

As a result of the M/V NOMADIC MILDE alliding with the M/V ATLANTIC VENUS, the M/V ATLANTIC VENUS lost its starboard anchor and chain, sustained hull damage to its bulbous bow and bow area, and has incurred additional costs and expenses for tug assistance, pilotage, temporary repairs and lost business revenues.

10.

At the time of the 8 May 2020 casualty, the M/V ATLANTIC VENUS was waiting to berth at the ADM Destrehan Grain Elevator facility, at approximately Mile 120.6 AHP of the lower Mississippi River, to load cargo for a voyage to Buenaventura, Colombia, which voyage was scheduled to begin between 10 and 14 May 2020.

11.

This Complaint is filed within six months from the date Petitioners' received first written notice of a limitable claim from Cornerstone Chemical on 9 May 2020.

12.

The M/V NOMADIC MILDE's allision with the M/V ATLANTIC VENUS at the Kenner Bend Anchorage and the M/V NOMADIC MILDE's subsequent allision with the Cornerstone Chemical facility were not due to any fault, neglect or want of care on the part of Petitioners or M/V ATLANTIC VENUS or anyone for whom said Petitioners may be responsible.

13.

The M/V NOMADIC MILDE's allision with the M/V ATLANTIC VENUS at the Kenner Bend Anchorage and the M/V NOMADIC MILDE's subsequent allision with Cornerstone Chemical Company, and the resulting losses and damages, if any, liability for which is specifically denied by Petitioners, were done, occasioned and occurred without the fault, privity or knowledge of the Petitioners.

14.

As a result of the aforementioned incident, Cornerstone Chemical, the owners of the M/V NOMADIC MILDE and, possibly, other entities allegedly sustained physical damages, economic and/or other losses.

15.

Cornerstone Chemical filed a lawsuit entitled "Cornerstone Chemical Company v. M/V NOMADIC MILDE , *et al*" in the United States District Court for the Eastern District of Louisiana, Civil Action No. 2:20-cv-1411 on 11 May 2020, contending the M/V ATLANTIC VENUS, *in rem*, has some liability for the M/V NOMADIC MILDE's allision with the Cornerstone Chemical facility and, in connection with that suit, a warrant of arrest was issued and was served on the M/V ATLANTIC VENUS on 12 May 2020, while the vessel was located in the Eastern District of Louisiana. The vessel is under arrest at the time this Limitation Action is being filed.

16.

As the M/V ATLANTIC VENUS was arrested in the Eastern District of Louisiana, venue is proper in this judicial district pursuant to Rule F(9) of the Supplemental Admiralty Rules.

17.

Petitioners are filing a list of all suits related to the aforementioned incident of which they have knowledge at the time of the filing of this Complaint. Petitioners are not currently aware of any other suits, petitions, demands, unsatisfied claims, or liens against Petitioners or the M/V ATLANTIC VENUS arising out of the aforementioned incident.

18.

The attached Ship Valuation from Japan Shipping Services Co., Ltd. dated 13 May 2020, shows the M/V ATLANTIC VENUS had a value of $9,500,000.00 at the time of the incident. (Exhibit A).

19.

As a result of the aforementioned incident, Petitioners' vessel sustained hull damage and a lost anchor and chain, and the current estimated cost of repair for that hull damage and anchored chain replacement is $400,000. Petitioners reserve the right to supplement and amend this paragraph as further facts are developed.

20.

Petitioners' interest in the M/V ATLANTIC VENUS, based on the attached Valuation Report from Japan Shipping Services Co., Ltd., less the estimated $400,000 cost to repair the hull damage sustained by the M/V ATLANTIC VENUS and replace her anchor and chain as a result of the M/V NOMADIC MILDE's allision, does not exceed the maximum sum of NINE MILLION ONE HUNDRED THOUSAND AND NO/100 ($9,100,000.00) UNITED STATES DOLLARS.

21.

The subject incident involving the M/V NOMADIC MILDE's allision with the M/V ATLANTIC VENUS at the Kenner Bend Anchorage and the M/V NOMADIC MILDE's subsequent allision with the Cornerstone Chemical facility occurred in the

Mississippi River on 8 May 2020, before the M/V ATLANTIC VENUS berthed at ADM Destrehan to load a grain cargo for Colombia.

22.

As a result of the aforementioned incident and Cornerstone Chemical's arrest of the M/V ATLANTIC VENUS, the voyage from the Mississippi River to Buenaventura, Colombia may be cancelled by the charterer.

23.

If the voyage from the Mississippi River to Colombia is not cancelled, the entire voyage was expected to last 24 days from 10 May until 2 June 2020. Golden Helm receives a daily charter rate of $7816.00 for the M/V ATLANTIC VENUS and, therefore, the pending charter hire for the voyage from the Mississippi River to Colombia would be $187,584, if the voyage is not cancelled.

24.

Petitioners herewith submit for Court approval, as security for the benefit of all potential claimants, a Letter of Undertaking from The Japan Ship Owners' Mutual Protection & Indemnity Association in the sum of $9,287,584.00, plus interest at six percent (6%) per annum from the date of said Letter of Undertaking, said sum representing the total value of the M/V ATLANTIC VENUS, her appurtenances, less the cost of repairs for hull damage sustained in the incident and replacement of her anchor and anchor chain, plus pending freight/charter hire through the end of the voyage.

However, if the voyage is cancelled, Petitioners reserve the right to reduce the security posted to reflect no pending freight/charter hire.  (See Letter of Undertaking, Exhibit B).

25.

Petitioners claim exoneration from liability for any and all injuries, deaths, losses, or damages occurring as a result of the aforementioned incident and for any and all claims therefor. Petitioners maintain they have valid defenses thereto on the facts and on the law. Alternatively, Petitioners, without admitting but affirmatively denying all liability, claim the benefit of the Limitation of Liability provided for in 46 U.S.C. §30501, *et seq.*, and, to that end, Petitioners herewith deposit into the registry of the Court, as security for the benefit of all potential claimants, the aforementioned Letter of Undertaking.

26.

Petitioners show that if they should be held liable to any degree to anyone, which is denied, their total liability should be limited to and not exceed the value of Petitioners' interest in the aforementioned vessel and her freight pending/charter hire in the maximum aggregate of $9,287,584.00.

27.

Should the Petitioners be found liable and the amount or value of Petitioners' interests in the M/V ATLANTIC VENUS and her pending freight, as aforesaid, is not sufficient to pay all losses in full, then all claimants shall be made to share pro rata in the aforesaid sum represented by the Letter of Undertaking, saving to all such claimants any

rights of priority they may have as ordered by this Honorable Court, or as provided by the aforesaid statutes, by the Federal Rules of Civil Procedure, including the Supplemental Admiralty Rules, the General Maritime Law, and by the rules and practices of this Honorable Court.

28.

All and singular the premises of this Complaint for Exoneration from or Limitation of Liability are true and correct and within the admiralty and maritime jurisdiction of the United States and of this Honorable Court, and within the meaning and intent of Rule 9(h) of the Federal Rules of Civil Procedure.

WHEREFORE, Petitioners, Golden Helm Shipping Co. S.A. and Osaka Fleet Co., Ltd., pray that:

1. This Court issue an Order approving the Letter of Undertaking submitted to the Court by Petitioners as security for the amount or value of their interest in the M/V ATLANTIC VENUS and her pending freight/charter hire;

2. This Court issue a notice to all persons asserting claims with respect to which this Complaint seeks exoneration from or limitation of liability, admonishing them to file their respective claims with the Clerk of this Court and to serve on the attorneys for Petitioners a copy thereof on or before a date to be named in the notice, and that if any claimant desires to contest either the right to exoneration from or the right to limitation of liability, such person shall file and serve on the attorneys for Petitioners an answer to this

Complaint on or before the said date, unless his or her claim has included an answer, so designated;

      3.     This Court enjoin the further prosecution of any and all actions, suits and proceedings already commenced and the commencement or prosecution thereafter of any and all actions, suits or proceedings, of any nature or description whatsoever in any jurisdiction against Petitioners, their officers, and underwriters, and/or against the M/V ATLANTIC VENUS, her officers and crews, or against any employee or property of Petitioners except in this action, to recover damages for or in respect of any loss, damage, injury or deaths occasioned or incurred as a result of the aforesaid accident;

      4.     This Court order that the arrest of the M/V ATLANTIC VENUS in Civil Action No. 2:20-cv-1411, United States District Court for the Eastern District of Louisiana, be lifted upon the filing of the $9,287,584.00 Letter of Undertaking as security for the benefit of all claimants in this Limitation Action;

      5.     This Court adjudge, after due proceedings, that Petitioners are not liable to any extent for any injuries, losses, deaths or damages occurring as a result of the accident, or for any claim therefor in any way arising out of or resulting from the aforesaid accident;

      6.     Alternatively, if Petitioners shall be adjudged liable, then such liability shall be limited to the amount or value of Petitioners' interest in the M/V ATLANTIC VENUS and her pending freight, as aforesaid, at the time of the accident, that Petitioners be discharged therefrom upon the surrender of such interest, and that the money surrendered,

paid or secured to be paid, as aforesaid, be divided *pro rata* according to the hereinabove mentioned statutes among such claimants as may duly prove and claim in accordance with the provisions of the Order hereinafter prayed for, saving to all parties any priorities to which they may be legally entitled, and that a decree may be entered, discharging the Petitioners and their underwriters from all further liability; and

7. Petitioners have such other and further relief as may be just and appropriate under the circumstances.

                Respectfully submitted,

                MURPHY, ROGERS, SLOSS,
                  GAMBEL & TOMPKINS

                */s/ Robert H. Murphy*
                _____
                Robert H. Murphy, T.A. (#9850)
                rmurphy@mrsnola.com
                Peter B. Tompkins (#17832)
                ptompkins@mrsnola.com
                Timothy D. DePaula (#31699)
                tdepaula@mrsnola.com
                701 Poydras Street
                Suite 400, One Shell Square
                New Orleans, LA   70139
                Telephone:  (504) 523-0400
                Fax:  (504) 523-5574
                *Attorneys for Petitioners, Golden Helm*
                *Shipping Co. S.A. and Osaka Fleet Co., Ltd.*

4833-5386-5148, v. 1
4833-5386-5148, v. 1